UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| JANET S. KELLERMAN and GREGORY K. KELLERMAN, husband and wife, | ) ) ) | |
| Plaintiffs, | ) ) | No. 2:14-cv-01878-RAJ |
| v. | ) ) ) | MEMORANDUM OPINION DENYING DEFENDANTS' |
| INTER ISLAND LAUNCH d/b/a PRINCE OF WHALES WHALE WATCHING, a British Columbia corporation; and BO J. GARRETT, a single individual, | ) ) ) ) ) | MOTION TO DISMISS FOR IMPROPER VENUE AND *FORUM NON CONVENIENS* |
| Defendants. | ) ) | |

I. INTRODUCTION

Plaintiffs Janet S. Kellerman and her spouse, Gregory K. Kellerman, commenced this action against Defendants Inter Island Launch d/b/a Prince of Whales Whale Watching ("Inter Island") and Bo J. Garrett. Plaintiffs claim that Ms. Kellerman sustained injuries during a whale watching tour that departed from Victoria, British Columbia. Defendants move to dismiss for improper venue arguing that Plaintiffs signed a release containing a forum selection clause and choice of law provision requiring that any suit arising from the tour be brought in British Columbia. Plaintiffs claim that they never signed such a release. Alternatively, Defendants move

to dismiss under the doctrine of *forum non conveniens*. For the following reasons, the Court concludes that Defendants' motion should be denied.

## II.  BACKGROUND

As discussed above, Defendants bring this motion pursuant to Federal Rule of Civil Procedure 12(b)(3) to enforce a forum selection clause that they claim Plaintiffs signed. As a Rule 12(b)(3) motion based on a forum selection clause, this Court is required to draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party, in this case, Plaintiffs. *Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2003). Accordingly, for purposes of this motion only, the Court will resolve any factual disputes between the parties in favor of Plaintiffs.

In 2013, Plaintiffs purchased tickets for a three-hour whale watching tour on Inter Island's vessel, the *Countess*. Compl. ¶ 12. Defendant Garrett, the skipper and guide for the *Countess*, intended to depart from Victoria and return to Victoria with no stops at any other ports. Compl. ¶¶ 5, 13; Declaration of Alan McGillivray ("A. McGillivray Decl.") ¶ 7. However, the *Countess* made an unanticipated stop at a dock in San Juan County, Washington after Ms. Kellerman sustained injuries. Declaration of Brad Korth ("Korth Decl.") Ex. C, D, E, I, J. According to Plaintiffs, Ms. Kellerman's injuries occurred after the Defendant Garrett turned toward the wake of a large yacht. *Id.* Once the *Countess* docked in San Juan County, Ms. Kellerman was airlifted to Harborview Medical Center in Seattle and treated for her injuries. A. McGillivray Decl. Ex. B; Declaration of Greg Kellerman ("Greg Decl.") ¶ 8.

Plaintiffs initiated this tort action against Defendants in the Western District of Washington. However, Defendants argue that Plaintiffs signed a release, which requires that any suit resulting from the whale watching tour be brought in British Columbia. A.

McGillivray Decl. ¶ 8, Ex. A. According to Defendants, all guests, including Plaintiffs, were required to review, complete, and sign a "Participant Agreement, Release, and Acknowledgement of Risk." A. McGillivray Decl. ¶ 8, Ex. A. Defendants describe this document as a single-spaced document, printed with twelve-point Times New Roman font on a single 11" x 17" sheet that is folded over like a booklet. *Id.*

As explained by Defendants, the first page of the booklet includes the title "Participant Agreement, Release, And Acknowledgement of Risk," the acknowledgment and assumption of risk clauses, and a release of liability clause. *Id.* at Ex. A. The second page of the booklet contains an indemnification clause, an insurance clause, a forum selection clause, a choice of law provision, and a waiver clause. *Id.* Neither the first nor the second page requires a passenger's signature or initials. Declaration of Daniel J. Park ("Park Decl.") Ex. A.

The third page of the booklet requires passengers to do the following in the order listed: disclose any pre-existing medical conditions; sign their name; print their name, address and telephone number; date the waiver; and fill out an indemnification section if a participant is under the age of nineteen. A. McGillivray Decl. Ex. A. The signature block is in the middle of the third page. *Id*. Unlike pages one and two, the third page has no pagination; nor does it have any carry-over sentences or references to pages one or two. Park Decl. Ex. A.

Inter Island insists that it has a policy that requires all employees to physically open all pages of the booklet, and to explain to passengers that they should read the entire booklet before signing it. Declaration of Fiona Mathieson ("Mathieson Decl.") ¶ 4. Inter Island also states that passengers are permitted to sign the booklet at the front desk or take the it and return it before the trip departs. Declaration of Elspeth McGillivray ("E. McGillivray Decl.") ¶ 7.

According to Plaintiffs, however, the Inter Island office was crowded and hectic when they arrived for their tour. They contend that they were given a one-page document to sign (later

identified as the third page of the booklet) and no one from Inter Island discussed the one-page document with them other than to tell them to sign it. In addition, Plaintiffs allege that the document did not contain a release or waiver at the time they signed it.

Ms. Kellerman states that she signed the document on a desktop surface and Mr. Kellerman states he signed it on a clipboard. Declaration of Jan Kellerman ("Jan Decl.") ¶ 4; Greg Decl. ¶ 5. They also claim that the document took less than one minute to complete. Jan Decl. ¶ 4. To corroborate their description of the one-page document that they allege they signed, Plaintiffs offer the declarations of three of the other seven passengers on their tour that day. *See* Declaration of Michael Heal ("Heal Decl.") ¶ 2; Declaration of Tuo Yu ("Yu Decl.") ¶ 2-3; Declaration of Maxime Le Merdy ("Le Merdy Decl.") ¶ 2.  All of these passengers recall that they signed a single page document, and that no one explained the document to them.  *Id*.

### III. ANALYSIS

A.  **The Court Denies Defendants' Motion to Dismiss for Improper Venue**

  1.  **Legal Standard – Rule 12(b)(3) Motion**

A motion to dismiss pursuant to a forum selection clause is treated as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3). *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009). When considering a motion to dismiss for improper venue, the pleadings need not be accepted as true and the court may consider facts outside the pleadings. *Id.* (citing *Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 323 (9th Cir. 1996)); *Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty*, 294 F.3d 1171, 1174 (9th Cir. 2002). However, "in the context of a Rule 12(b)(3) motion based upon a forum selection clause, the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party . . . ." *Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2003); *see also Peterson v. Boeing Co.*, 715 F.3d 276, 279 (9th Cir. 2013).

2.     **Discussion**

Defendants assert that this suit must be dismissed because Plaintiffs agreed to the forum selection clause that requires that any suit be brought in British Columbia. Def.'s Mot. to Dismiss at 7, 10-19. Defendants insist that Plaintiffs were aware of the forum selection clause because its employees were required to physically open all pages of the booklet and ask passengers to read the entire booklet before signing it.[2] *Id.* at 11-12.  Moreover, Defendants argue that Plaintiffs' signatures on the third page of the booklet indicate that they understood and agreed to the entire booklet, including the forum selection clause. Def.'s Reply at 2-3.

Plaintiffs respond that they are not bound by the forum selection clause because they were never shown it (*i.e.*, it was not included on the one-page document they alleged they signed) and therefore could not have manifested their assent to the clause. Pl.'s Opp'n at 9-10. According to Plaintiffs, they believed they were signing a single page disclosure of medical conditions and contact information (page three of the booklet). *Id.* Plaintiffs argue that page three of the booklet reasonably appeared to be a stand-alone document because it did not include references to prior pages nor did it have any pagination to indicate it was the third page of a three-page document. *Id.*  Finally, Plaintiffs point to declarations by three of Plaintiffs' co-passengers that corroborate their version of events: namely, that Inter Island employees did not show the passengers the entire booklet or explain that they should read it all, but rather hastily urged the passengers to sign a one-page document in a crowded and hectic office. *Id.* at 10.

---

[2]     Defendants also argue that enforcement of the forum selection clause is reasonable because Plaintiffs would still have an adequate forum in which to bring their case.  The Court does not reach this argument given that Defendants have failed to demonstrate that Plaintiffs manifested their assent to the forum selection clause in the first place.

In their reply, Defendants contend that the one-page document signed by the Plaintiffs does indeed refer to the booklet's prior pages.  More specifically, Defendants note that the bottom of page three includes an indemnification clause for the parents/guardians of children which contains an acronym that was earlier defined on page one of the booklet. *Id.* at 5. *Id.* at 5. Additionally, Defendants insist that the passengers' decision to complete the waiver quickly should not invalidate the enforceability of the waiver. *Id.*

### 3.  Defendants Fail to Demonstrate Plaintiffs Agreed to the Forum Selection Clause

To determine the enforceability of a forum selection clause, a federal court must ask whether a contract existed under state law. *See San Diego Police Officers' Ass'n v. San Diego City Emps. Ret. Sys.*, 568 F.3d 725, 737 (9th Cir. 2009) ("[F]ederal courts look to state law to determine the existence of a contract . . . ."). Under Washington state law, the proponent of the contract bears the burden of proving the existence of a contract. *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004). Of particular relevance here, "[i]t is essential to the formation of a contract that the parties manifest to each other their mutual assent to the same bargain at the same time." *Yakima Cty. (W. Valley) Fire Prot. Dist. No. 12 v. Yakima*, 122 Wash.2d 371, 388 (Wash. 1993). Mutual assent can be shown by a party's signature on a contract, even if that party did not read it. *Id.* (citing *Skagit State Bank v. Rasmussen*, 109 Wash. 2d 377, 381-84, 745 P.2d 37 (1987). However, mutual assent is lacking if a party is "deprived of the opportunity to read the contract." *Id.*

Here, Defendants have failed to demonstrate that Plaintiffs gave their mutual assent to the forum selection clause. Despite Defendants' claim that its employees are required to show the entire waiver booklet to passengers and urge them to read all three pages, Plaintiffs have provided declarations by three of the other eight passengers on the tour supporting Plaintiffs'

claim that Defendants' employees did not follow such policy on the day of Plaintiffs' whale-watching tour. Moreover, Plaintiffs assert that they had no knowledge of the first two pages of the booklet because only the third page was presented to them on a flat surface (like a clipboard or a desk), and, therefore, they believed that they were signing a single page document which only asked them for a disclosure of medical and contact information.

Accepting Plaintiffs' representation of the facts as this Court is required to do, the Court finds that Plaintiffs' belief is reasonable given that the third page of the booklet does not contain any language or information referencing the two prior pages and lacks pagination or anything else that would suggest there was more than one page to the document. The Court is unpersuaded by Defendants' argument that the indemnification section on the third page uses acronyms that are defined in prior pages and, therefore, Plaintiffs should have known that there were additional pages. Not only was the indemnification provision crossed out in the Plaintiffs' waivers, but the provision was also located at the very bottom of the page, several lines below the signature line. *See* A. McGillivray Decl. Ex. A.

In addition, Plaintiffs were not required to initial or confirm in any way that they had agreed to the first and second page of the booklet. Plaintiffs' signatures on the third page cannot definitively prove that they assented to the contractual terms located on the second page of the booklet, when it is questionable whether Plaintiffs knew that a second page even existed. Under these circumstances and drawing all reasonable inferences to the Plaintiff (as the Court must given the procedural posture of this case), Defendants have failed to demonstrate that Plaintiffs manifested their assent to the forum selection clause which was located on the second page of the booklet.

## B. The Court Denies Defendants' Motion to Dismiss for *Forum Non Conveniens*

### 1.     Legal Standard for *Forum Non Conveniens* Dismissal

"The doctrine of forum non conveniens is based on the inherent power of the courts to decline jurisdiction in exceptional circumstances." *Paper Operations Consultants Intn'l, Ltd. v. SS Hong Kong Amber*, 513 F.2d 667, 670 (9th Cir. Cal. 1975). More specifically, the doctrine is used by federal courts to refuse jurisdiction of cases that "should have been brought in a foreign jurisdiction, rather than in than in the United States." *Id.* (citation and internal quotations omitted). "The ultimate question to be decided in determining whether the doctrine of *forum non conveniens* is applicable is whether 'the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else.'" *Id.* (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)).

"To prevail on a motion to dismiss based upon *forum non conveniens*, a defendant bears the burden of demonstrating an adequate alternative forum,[4] and that the balance of private and public interest factors favors dismissal." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011). Therefore, the Court analyzes the private and public interest factors with respect to this case.

---

[4]     An adequate alternative forum exists when the remedy is satisfactory and the defendant is amenable to service of process in the alternative forum. *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 701 (9th Cir. 1995). Defendants argue that an adequate alternative forum exists because Defendants are amenable to service of process in the alternative forum and Plaintiffs can still pursue their claims under Canadian law. Mot. to Dismiss at 20-21. Assuming *arguendo* that British Columbia is arguably an adequate alternative forum, the Court finds that the balancing of the private and public factors weighs in favor of allowing this case to remain in the Western District of Washington. Accordingly, the Court will not delve into the detailed arguments by the Plaintiff why a Canadian court would not present an adequate alternative forum.

### 2.     The Private Factors Do Not Weigh in Favor of Dismissal

Defendants argue that the private factors favor dismissal because Defendants, the witnesses, and the evidence are located in British Columbia, making travel to that forum more convenient and less costly. Defs.' Mot. at 22. Plaintiffs argue that, as plaintiffs, they have the right to choose the forum within which to bring their case and Washington is no less convenient as a forum than British Columbia. Pls.' Opp'n at 22-23. Finally, Plaintiffs urge that a judgment secured in the Western District of Washington will be readily enforced in Canada. *Id.* at 23.

The following private interest factors are considered when deciding a motion for *forum non conveniens*: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Bos. Telecomm. Grp., Inc. v. Wood*, 588 F.3d 1201, 1206-07 (9th Cir. 2009) (citing *Lueck v. Sundstrand Corp.*, 263 F.3d 1137, 1145 (9th Cir. 2001)).

The parties and the witnesses are located in two countries. Defendants reside in Canada, whereas Plaintiffs reside in the United States. The witnesses reside in various provinces throughout Canada. The cost of flying witnesses for depositions or flying them to trial is relatively the same whether the trial is held in Victoria, British Columbia or Seattle, Washington, given that the two cities are not far from one another.[5]  Moreover, there is also no indication that there will be unwilling witnesses that will require a court's subpoena power in order to compel testimony.

---

[5]     The Court takes judicial notice that the two cities are roughly 180 miles from one another.

With respect to the location of evidence in this case, Plaintiffs indicate that the only evidence they intend to present are documents. Modern technology easily allows for the transfer of such documents from one location to another. Although Defendants raise the possibility that the *Countess* will need to be inspected, Plaintiffs reassure the Court that they have no desire to inspect the *Countess* and Defendants have not otherwise persuaded the Court that such an inspection will become critical to this case. Pls.' Opp'n at 22. As for the enforceability of any future judgment, there is no reason to question that a Canadian court would enforce a judgment entered in a United States court. *Cf. Morguard Invs. Ltd. v. De Savoye* [1990] 3 S.C.R.

### 3. The Public Factors Do Not Weigh in Favor of Dismissal

Defendants argue that the public factors favor dismissal because Washington's interest in resolving this dispute is minimal, the burden on juries would be great, the Western District of Washington has a full docket, and this Court does not regularly preside over Canadian maritime law. Mot. to Dismiss at 23. In response, Plaintiffs emphasize that Washington and the people in the Seattle community are interested in resolving tort actions where the alleged accident and treatment occurred in Washington. Pls.' Opp'n at 23.

The public interest factors considered when deciding whether to dismiss a case include: "(1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (3) the interest in having a diversity case tried in a forum familiar with the law that governs the action; [and] (5) the avoidance of unnecessary problems in conflicts of law." *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 703-04 (9th Cir. 1995).

The Court agrees that Washington state and the people from the Seattle community who

may end up serving on a jury in this case have a significant interest in adjudicating this dispute. Not only did the accident allegedly occur in Washington waterways, but the *Countess* also docked in a Washington port where local Emergency Medical Services evaluated Ms. Kellerman and then airlifted her to Harborview Medical Center in Seattle. Furthermore, the Court does not anticipate any unusual "administrative difficulties flowing from court congestion," and there is no indication that the court system in British Columbia is any less busy than this district court. Nor is the Court persuaded by Defendants' bald assertions regarding this Court's lack of familiarity with the governing law, whatever that law may be.[6] As such, the public factors do not tip in favor of dismissal.

In conclusion, even if Canada is an adequate alternative forum, the balance between public and private factors does not strongly favor dismissal. *See Paper Operations Consultants International, Ltd. v. SS Hong Kong Amber*, 513 F.2d 667, 671 (9th Cir. Cal. 1975) ("[T]he plaintiff's choice of forum should rarely be disturbed unless the balance is strongly in favor of adjudicating the matter in another forum." (internal quotation and citation omitted)). Accordingly, Defendants' motion to dismiss for improper venue and *forum non conveniens* is denied.

---

[6] It is clear that this litigation will include questions of choice of law. The Court makes no opinion as to that issue here.

## IV. CONCLUSION & ORDER

For the foregoing reasons, the Court hereby **DENIES** Defendants' motion for dismissal. The parties are hereby ordered to meet and confer under Federal Rule of Civil Procedure 26(f), and propose a joint scheduling order that will govern this case. The 26(f) Report and Proposed Order are due within 60 days of this Order.

October 30, 2015

*Barbara J. Rothstein*

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE